UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 07-50 (ADM/SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| KAMIL MADFOUN AL-ESAWI (04), | |
| **Defendant.** | |

---

David J. MacLaughlin, Office of the United States Attorney, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for Plaintiff United States of America

Richard H. Kyle, Jr., Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, Minnesota 55402, for Defendant Kamil Madfoun Al-Esawi

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Kamil Madfoun Al-Esawi's Motion to Suppress Statements (Doc. No. 111). This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.[1]

**I.    BACKGROUND**

An Indictment was filed on February 13, 2007, charging Defendant Kamil Madfoun Al-Esawi and twelve other individuals with conspiring to defraud the United States from collecting sales tax

---

[1] The Court will address Defendant Al-Esawi's pending non-dispositive motions in a separate Order. This case is scheduled for trial before the Honorable Ann D. Montgomery on October 9, 2007.

revenue from tobacco stores. The Indictment contains thirty-nine additional counts, none of which are alleged against Defendant Al-Esawi.

This Court held a pretrial motions hearing on August 6, 2007. Internal Revenue Service Special Agent Timothy Nichols testified at the hearing, and the Court received one exhibit into evidence: a Memorandum of Interview written by Special Agent Nichols (Gov't Ex. 1).

## II.   FACTS

The following facts were elicited from Special Agent Nichols' testimony at the pretrial motions hearing and from Government Exhibit 1. On January 20, 2006, Special Agent Nichols and Federal Bureau of Investigation Special Agent Brian Kinney went to a tobacco store at 1700 Rice Street in Maplewood, Minnesota, to interview Defendant Al-Esawi about the ownership of the store. Defendant Al-Esawi worked as a part-time cashier at the store. Although Musaab Wazwaz was the reported owner of the Maplewood store, the agents believed the true owner was Tawfiq Wazwaz. The agents were investigating the ownership of the store as part of a larger investigation targeting dozens of tobacco stores owned and operated by the Wazwaz extended family.

Special Agents Nichols and Kinney arrived at the store at approximately 1:30 p.m. in an unmarked vehicle. Both agents were wearing street clothes, which concealed their weapons. When the agents entered the store, Defendant Al-Esawi was standing behind the service counter, assisting two customers. The agents introduced themselves and showed their identification badges to Defendant Al-Esawi. They did not display their weapons or handcuffs, nor did they touch Defendant Al-Esawi. When they asked Defendant Al-Esawi if he would speak with them, he readily agreed to answer their questions. The agents questioned Defendant Al-Esawi for about two hours in the front part of the

store. Customers entered the store on numerous occasions during the interview, and Defendant Al-Esawi was always free to interrupt the discussion and assist them as he normally would. Although English was not Defendant Al-Esawi's native language, he spoke English proficiently and gave responsive answers to the questions posed to him. At one point during the interview, Defendant Al-Esawi said that he had been tortured in Iraq and suffered from feet and head problems as a result. The agents did not make any threats or promises, nor did they use any coercive language or tactics. The agents never restricted Defendant Al-Esawi's movements or freedom of action in any way, although they did not explicitly tell him that he was free to leave. Defendant Al-Esawi was not arrested at the end of the interview.

Immediately after the interview ended, Special Agent Nichols left the premises to obtain a subpoena for the video surveillance tape of the store. When he returned, he gave the subpoena to Musaab Wazwaz, who had arrived at the store by this time. Musaab Wazwaz gave his consent to the agents to search the store. During the search, the agents asked Defendant Al-Esawi a few brief questions, such as where the office keys were located.

## III.   DISCUSSION

Defendant Al-Esawi moves to suppress the statements he made to Special Agents Nichols and Kinney on the grounds that he was not advised of his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). Defendant Al-Esawi argues that a <u>Miranda</u> warning was required because he was interrogated in a custodial setting. He also submits that his statements were not voluntary because the agents employed coercive tactics and ignored his mental condition.

3

### A.     Defendant Al-Esawi's Custodial Status

The Fifth Amendment privilege against self-incrimination protects individuals from being forced to testify against themselves. U.S. Const. amend. V. Law enforcement officers must warn a person of the rights subsumed in the privilege against self-incrimination before interrogating that person in a custodial setting. Miranda, 384 U.S. at 460-61. The "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." Stansbury v. California, 511 U.S. 318, 323 (1994). Rather, the "relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984). The test is whether a reasonable man in Defendant's position would have believed that his "freedom of action [was] curtailed to a 'degree associated with formal arrest.'" Id. at 440 (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)). The Eighth Circuit has identified several "indicia of custody" to aid courts in determining whether a Miranda warning was required:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990).

Turning to the facts of this case, the agents did not tell Defendant Al-Esawi that the questioning was voluntary, that he could leave or ask the agents to leave, or that he was not under arrest.

Ordinarily, a law enforcement officer's failure to inform a person that he is not under arrest or that the questioning is voluntary is a strong sign of custody. See id. at 1349-50. In this case, however, this factor is mitigated slightly because the agents told Defendant Al-Esawi they wanted to question him about the ownership of the store. As Defendant Al-Esawi knew he was not the owner, he would have reasonably believed that he was not the focus of the investigation, and thus, not a suspect. See United States v. Carter, 884 F.2d 368, 370 (8th Cir. 1989) (stating that the actual focus of an investigation is relevant to a suspect's reasonable belief if he is made aware of any evidence against him and that the investigation is, in fact, focused on him). Nevertheless, the first Griffin factor tilts in favor of finding a custodial setting.

As to his freedom of movement, Defendant Al-Esawi argues that the agents effectively curtailed his ability to move freely by interviewing him during business hours while he was working alone, thereby precluding him from leaving the store. The Court rejects this application of the second Griffin factor. For the purpose of determining custody, freedom of movement is fairly considered to be restrained where the person is handcuffed or otherwise physically restrained, see United States v. Black Bear, 422 F.3d 658, 662 (8th Cir. 2005); or expressly forbidden to move or positioned between law enforcement officers, see Carter, 884 F.2d at 372. None of these circumstances were present here. Defendant Al-Esawi was completely free to move about the store during the interview. The agents did not tell him where to sit, or even that he must sit. When customers entered the store, Defendant Al-Esawi could interrupt the interview and attend to them. The interview occurred in the front part of the store, and the store remained open for business. There is no evidence that Defendant Al-Esawi could not have simply closed the store and left, if he had wanted to do so. The Court therefore finds that

Defendant Al-Esawi's freedom of movement was not restrained during questioning.

Although Defendant Al-Esawi did not initiate the contact with the agents, the Court finds that he voluntarily agreed to speak with them. Special Agent Nichols testified that Defendant Al-Esawi did not appear reluctant to speak with them, and the record unequivocally demonstrates that Defendant Al-Esawi spoke freely and openly with the agents at length and did not seek to end the interview.

Regarding the use of any strong-arm or deceptive tactics, Defendant Al-Esawi accuses the agents of targeting him for isolated questioning because of a mental impairment and a history of being tortured by government authorities in Iraq. While compelling at first glance, this argument lacks evidentiary support. The agents only learned of the claimed torture and mental condition during the interview; thus, they could not have targeted Defendant Al-Esawi for questioning beforehand because of it. Once Defendant Al-Esawi told the agents this information, there is no evidence that they exploited this knowledge or changed their interviewing tactics in any way. Defendant Al-Esawi's assertion in his post-hearing memorandum that he told the agents he was seeing a psychiatrist (Def.'s Mem. Supp. Mot. Suppress Statements at 7) is not supported by the record. Defendant Al-Esawi's characterization of the questioning as "aggressive" (id.) is similarly lacking in support. Finally, although there were no other employees present in the store during most of the interview,[2] Defendant was not isolated during questioning. The store remained open for business; numerous customers came and went; and the interview took place in a public setting. The agents' desire to speak with Defendant Al-Esawi while Musaab and Tawfiq Wazwaz were away from the store was logical given the focus of the investigation.

---

[2] The only other person known to the agents to have worked at the store was Musaab Wazwaz. (Gov't Ex. 1 at 1.)

The Eighth Circuit has stated that "some degree of coercion is part and parcel of the interrogation process and that the coercive aspects of a police interview are largely irrelevant to the custody determination except where a reasonable person would perceive the coercion as restricting his or her freedom to depart." United States v. LeBrun, 363 F.3d 715, 721 (8th Cir. 2004). The Court finds that a reasonable person in Defendant Al-Esawi's position would not have perceived the agents' interviewing tactics and strategies as restricting his freedom to leave or to terminate the interview.

With respect to the environment in which the questioning was conducted, the Court finds that it was not police-dominated. The interview took place in a setting with which Defendant Al-Esawi had great familiarity, as it was his place of employment. The store remained open to the public during the questioning, and numerous customers came and went unimpeded. Defendant Al-Esawi was free to attend to business as he saw fit. Only two agents were present, neither of whom wore a uniform or displayed his weapon. Although the interview lasted approximately two hours, the length was affected more by Defendant Al-Esawi's need to assist customers than by the agents' questions. In addition, a two-hour period of questioning is "certainly not a marathon session designed to overcome" a defendant's will. See United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985).

The final detail relevant to the custodial inquiry is that Defendant Al-Esawi was not arrested either at the end of the interview or later that day after the agents completed the consent search.

After considering the totality of the circumstances surrounding the agents' questioning of Defendant Al-Esawi, the Court concludes that Defendant was not in custody during the questioning. Accordingly, the agents were not obligated to advise Defendant Al-Esawi of his Miranda rights, and his motion to suppress his unwarned statements should be denied.

### B. Voluntariness

Defendant Al-Esawi asserts that his statements to Special Agents Nichols and Kinney were made involuntarily and therefore must be suppressed. In particular, he avers that the agents employed coercive tactics and ignored his claimed mental impairment.

The voluntariness of a defendant's statement is determined by examining all of the circumstances surrounding the making of the statement. United States v. Hyles, 479 F.3d 958, 966 (8th Cir. 2007). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." Id. (quotation omitted). The Court has already discussed the lack of any coercive tactics and the non-effect of Defendant Al-Esawi's claimed mental condition on the agents' interviewing tactics, and that discussion is incorporated here. In addition, there were no threats, acts of violence, or promises made by the agents during the interview. Although English is not Defendant Al-Esawi's native language, he understood Special Agent Nichols' questions and responded appropriately. Defendant Al-Esawi has not introduced any evidence of a mental condition that would have affected his ability to exercise his will. Similarly, there is no evidence that Defendant Al-Esawi was taking medication or was under the influence of drugs or alcohol.

Indeed, the only additional argument advanced by Defendant Al-Esawi is that the agents did not interview the supposed owners of the Maplewood store, which according to Defendant, demonstrates that the agents purposefully targeted him for questioning. However, it is not for the Court to comment on the investigatory techniques of law enforcement officers, as long as such techniques are lawful. In this case, Special Agents Nichols and Kinney acted within lawful bounds in questioning

Defendant Al-Esawi. Defendant's statements were made voluntarily and should not be suppressed.

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Kamil Madfoun Al-Esawi's Motion to Suppress Statements (Doc. No. 111) be **DENIED**.

Dated: September 7, 2007

                                              s/ Susan Richard Nelson
Susan Richard Nelson
United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 21, 2007,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.